IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

A. PEREZ Y CIA., S.L.,                          §
                                                §
                       Plaintiff,               §          C.A. No. _____
                                                §
v.                                              §
                                                §
HONOR WORLDWIDE LOGISTICS LLC,                  §
                                                §
                       Defendant.               §

## PLAINTIFF'S VERIFIED COMPLAINT &
## APPLICATION FOR INJUNCTIVE RELIEF

Plaintiff A. Pérez y Cía., S.L. ("Perez"), by and through its attorneys Hill Rivkins LLP, files its Complaint and Application for Injunctive Relief against defendant Honor Worldwide Logistics LLC ("Honor"), and in support thereof would show as follows:

### PARTIES

1.     This action arises from the multimodal shipment of thirty (30) wind turbine blades from North Dakota to South Korea by way of the Port of Houston, Texas.

2.     At all times relevant hereto, plaintiff Perez was and now is a corporation or other business entity organized and existing under Spanish law, with an office and place of business at Fortuny 9, 28010 Madrid, Spain, engaged in business as a shipping and logistics service provider.

3.     At all times relevant hereto, defendant Honor was and now is a limited liability company or similar business entity organized and existing under Texas law, with an office and place of business at 5200 Hollister, Suite 300, Houston, Texas 77040, engaged in business as a freight forwarder licensed by the Federal Maritime Commission ("FMC").

1

## JURISDICTION & VENUE

4.     This Honorable Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 in that the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and is between citizens of a State and a Foreign State.

5.     Defendant Honor is also subject to the personal jurisdiction of this Honorable Court by virtue of conducting business within and through this District and the State of Texas.

6.     Venue is proper pursuant to 28 U.S.C. § 1391, in that defendant Honor resides within this District.

## FACTS

7.     In May 2014, Perez contacted Honor, a freight forwarder, for assistance in arranging the transportation of a shipment of thirty (30) wind turbine blades ("Shipment") from the manufacturer's facility in Grand Forks, North Dakota to the Port of Houston, Texas by motor carriage, and thence by ocean carriage to the Port of Mokpo, South Korea.

8.     The turbine blades were to be supplied by non-party Alstom Renovables España, S.L. ("Alstom") to non-party GS Engineering & Construction ("GSE&C") for use in the Gimnyeong wind farm project on Jeju Island, South Korea.

9.     Perez specifically advised Honor that Alstom required delivery of the Shipment to Korea no later than week 35 (i.e., August 25, 2014) and that time was of the essence.

10.    Perez also supplied Honor with a schematic detailing the weight and dimensions of the wind turbine blades.

11.    Honor agreed to arrange the inland and ocean transportation of the Shipment on Perez's

2

behalf in exchange for certain monetary consideration.

12.     Thereafter, on May 19, 2014, Perez advised Honor that, in order to "fix" or confirm the booking, Perez would require an inland freight rate of "Usd 615.000 all in." Perez also requested technical drawings of the tractor trailers to be used for the inland carriage.

13.     The following day, Honor advised that it believed it could "get pricing down to usd 615,000 all in" and requested Perez to confirm the nomination so that Honor could book the equipment needed to transport the Shipment from North Dakota to the load port with the actual motor carriers at that rate.

14.     Relying on Honor's representations, Perez entered into a lump-sum contract with Alstom for arranging the transportation of the Shipment.

15.     On June 4, 2014, Perez again requested that Honor provide details for the inland carriage equipment, as well as a sketch of the platform trailer loaded with the turbine blade.

16.     The same day, Honor advised Perez that it had secured three tractor trailers and was waiting on an additional three.

17.     In response, Perez advised Honor on June 5, 2014 that six tractor trailers would be insufficient to transport all 30 turbine blades to the load port in time to meet the week 35 delivery deadline. Therefore, Perez requested Honor to confirm that it could secure additional equipment to ensure that the turbine blades would arrive at the Port of Houston on time. Perez also advised that it "urgently need[ed] the transport sketch of the platform loaded, if it's not validated by Alstom we cannot start with the transports."

18.     The same day, Honor provided Perez with a schematic for a trailer with a three-axle rear

platform as requested by Perez.  However, Honor did not advise Perez that two-axle rear platform trailers would be used to transport the turbine blades instead.

19.     The following day, Honor advised that it was able to secure guaranteed rate of $35,400 per load (or $1,062,000) with a second motor carrier.  However, Perez immediately rejected the proposal, advising that it had signed a contract with Alstom which included a lump sum of $655,000 for inland freight based on Honor's representations and that the increase—made just four days before transport was to begin—was not acceptable.

20.     Shortly thereafter, Honor tendered another revised rate of $27,400 per load (or $822,000), which Perez also rejected.

21.     Honor then tendered a final rate of "Usd 22,850.00 per truck – 6 to 8 trucks per week" and "2.5% commission on the o/f [ocean freight] and terminal charges" to Perez by email on June 6, 2014.  Honor also requested Perez to "confirm ASAP" so that Honor could "lock this in and begin positioning equipment."

22.     Even though the final rate proposed by Honor on June 5, 2014 ($22,850 per load or $685,500) was higher than the figure discussed on May 19-20, 2014 ($615,000), Perez confirmed the final rate and instructed Honor to proceed on June 6, 2014.

23.     On June 9, 2014, Perez again requested that Honor provide a technical sketch of the platform trailer (loaded with a turbine blade) to be used by the motor carriers.  The following day, Perez requested that Honor confirm the equipment that would be used on June 11 to load the first five blades.

24.     Thereafter, the inland carriers began transporting the turbine blades from Grand Forks,

4

North Dakota to Houston, Texas.

25.     On June 11, 2014, Honor indicated to Perez that the "blade loading configuration [was] wider than previously thought" and that, as a result, the travel distance had increased by roughly 700 miles.  Similarly, on June 13, 2014, Honor indicated that the inland carrier transit has increased by 3 or 4 days and further quoted a freight rate of $34,313 per load (or $1,029,390) to Perez.

26.     In response, Perez confirmed with Alstom that the blade dimensions and schematic initially provided to Honor were correct.  Honor acknowledged that such information was correct on June 13, 2014

27.     Nevertheless, Honor claimed that the motor carrier's unfamiliarity with the turbine blades and decision to load them on the upper deck of the platform trailer increased the overall height of the loads and increased the travel distance by 577 miles.  Honor also quoted a new freight rate of $32,347 per load (or $970,410) to Perez, even though several blades were already en route to Houston.

28.     On June 16, 2014, Perez reminded Honor that it had rejected a proposed freight rate of $35,400 per load on June 6 and that it could not modify the terms of its contract with Alstom to cover additional inland freight.

29.     On June 19, 2014, Honor advised Perez that the motor carrier had not offered any concessions and requested that Perez confirm the increased freight rate of $32,347 per load.

30.     Perez refused to confirm such a rate, which did not conform to the final rate quoted by Honor and accepted by Perez on June 6, 2014.

31.     Despite the dispute over in the inland freight rate, all of the turbine blades were transported

by motor carriage from Grand Forks, North Dakota to the Port of Houston, Texas.

32.     In addition, Perez appointed surveyors to investigate the type of trailer used to transport the final eight (8) turbine blades, which arrived at the load port on July 7 – 8, 2014.

33.     Perez's surveyors witnessed the arrival of the final eight (8) turbine blades at the load port and reported that the inland carriers had not used the appropriate type of trailer requested by Perez.

34.     Perez's surveyors further reported that the use of such trailers (two-axle rear platform) increased the height and width of each load, which would not have occurred if the motor carriers had used the correct type of trailer (three-axle rear platform) as per the schematic provided to Perez by Honor.

35.     Honor did not advise Perez prior to the movement of the turbine blades that such trailers would be used.

36.     The turbine blades were then loaded onto the M/V WARNOW SUN ("Vessel") for transport to South Korea by ocean carriage.

37.     As the carrier booked by Honor, non-party Rickmers-Linie GmbH & Cie. KG ("Rickmers") issued ocean bill of lading no. RCKI6003HOU02 for the Shipment.

38.     The Vessel departed the Port of Houston on or about July 9, 2014 and is currently en route to Mokpo, South Korea.

39.     Perez remitted payment to Honor for the ocean freight charged by Rickmers.

40.     Perez also remitted payment to Honor for the inland freight in accordance with the final

rate tendered by Honor on June 6, 2014.

41.     However, Honor invoiced Perez for an additional $285,420 in inland freight, described as "additional charges due to incomplete technical dwgs [drawings]."

421.     Honor claims that the increased height and width of each loaded turbine blade required the motor carriers to use alternative routes, thereby increasing the mileage and freight and/or state permit charges for the inland carriage.

43.     Honor now refuses to release the original bill of lading or to direct the release of said bill of lading pursuant to Perez's instructions, unless the additional inland freight charges are paid by Perez.

44.     Honor's refusal to release the original bill of lading or to direct the release said bill of lading will prevent Perez, Alstom, and/or GSE&C from taking delivery of the Shipment upon arrival in South Korea.

## FIRST CLAIM FOR RELIEF
### (Breach of Contract)

45.     Perez repeats and re-alleges paragraphs 1 - 44 as is set forth at length herein.

46.     At Perez' s request, Honor agreed to arrange the transportation of the Shipment from Grand Forks, North Dakota to Mokpo, South Korea by way of the Port of Houston, Texas, in exchange for certain consideration.

47.     Honor tendered a final rate of "Usd 22,850.00 per truck -- 6 to 8 trucks per week" and "2.5% commission on the o/f [ocean freight] and terminal charges" for the inland carriage to Perez on June 6, 2014, which Perez accepted.

48.     Perez remitted payment to Honor for the ocean and inland freight in accordance with the final rate tendered by Honor and accepted by Perez, thereby performing under the parties' contact.

49.     By refusing to release the original bill of lading or to direct the release of same in accordance with Perez's instructions—unless Perez pays an additional $285,420 in inland freight—Honor has breached the parties' contract.

50.     Accordingly, Honor is liable for any and all direct and compensatory damages resulting from its breach.

51.     In addition, Honor's unlawful withholding or refusal to direct the release of the original bill of lading exposes Perez to claims for consequential damages resulting from the untimely delivery of the Shipment, which are foreseeable and recoverable against Honor.

## SECOND CLAIM FOR RELIEF
### (Breach of Freight Forwarder Duties)

52.     Perez repeats and re-alleges paragraphs 1 - 51 as is set forth at length herein.

53.     As a freight forwarder that agreed to arrange the transportation of the Shipment, Honor owed certain fiduciary duties, including duties of loyalty and obedience, to Perez.

54.     The federal regulations promulgated by the FMC also establish a duty of good faith and fair dealing on the part of freight forwarders and prevent them from withholding any information concerning a forwarding transaction from their principals.

55.     Honor breached its duties as a freight forwarder to Perez by:

     (a) failing to provide Perez with the information requested on the type

8

of equipment to be used for the inland carriage;

(b) failing to advise Perez of the types of trailers that would be used for the inland carriage prior to the movements;

(c) failing to advise Perez that the use of such trailers would result in additional inland freight charges;

(d) invoicing Perez for additional inland freight charges in violation of the parties' agreement;

(e) attempting to assert a maritime lien where none exists for inland freight;

(f) refusing to release or to direct the release of the original bill of lading in accordance with Perez's instructions, unless additional inland freight is paid.

56.     As a direct and proximate cause of Honor's breach of its fiduciary and freight forwarder duties, Perez has suffered and will continue to suffer cognizable damages.

57.     In addition, Perez is entitled to recover punitive damages against Honor for its willful and intentional breach of the aforesaid duties.

### THIRD CAUSE OF ACTION
### (Conversion)

58.     Perez repeats and re-alleges paragraphs 1 - 57 as is set forth at length herein.

59.     Perez is entitled to the possession of the original bill of lading and is authorized to

instruct that said bill be released by Honor to Alstom, GSE&C, their agents and/or designees.

60.     Perez has demanded that Honor release or direct the release of the original bill of lading to enable Alstom, GSE&C, their agents and/or designees to take delivery of the Shipment upon arrival in South Korea.

61.     Honor has refused and continues to refuse to release or direct the release of the original bill of lading without justification, thereby unlawfully and wrongfully exercising dominion, ownership, or control over said bill of lading—to the exclusion and detriment of the same rights of Perez, Alstom, and/or GSE&C.

62.     Honor's refusal to release or instruct the release of the original bill of lading, as well as its concurrent attempt to assert a lien where none exists, constitute an unlawful conversion of such property.

63.     Accordingly, Honor is liable for any and all damages resulting from its refusal to release or direct the release of the original bill of lading in accordance with Perez's instructions.

**FOURTH CLAIM FOR RELIEF**
**(Declaratory Relief Pursuant to 28 U.S.C. § 2201)**

64.     Perez repeats and re-alleges paragraphs 1 - 63 as is set forth at length herein.

65.     The parties' agreement did provide for the adjustment of the inland freight rate based upon the type of trailer used by the motor carriers.

66.     The parties' agreement did not provide for the withholding of the ocean bill of lading on the basis of a dispute regarding freight charges.

67.     The parties' agreement did not incorporate any terms and conditions of service claimed by Honor, whether by reference or by direct incorporation therein.

68.     Perez has remitted full payment for the ocean and inland freight in accordance with the final rate tendered by Honor and accepted by Perez.

69.     Accordingly, Perez is entitled to a judgment declaring that: (a) Perez is not liable to Honor for the $285,420 in additional inland freight charges under the parties' agreement; and (b) no lien exists on either the bill of lading or the Shipment, whether maritime or contractual in nature, in Honor's favor.

## APPLICATION FOR INJUNCTIVE RELIEF

70.     Perez repeats and re-alleges paragraphs 1 – 69 as is set forth at length herein.

71.     Pursuant to Fed. R. Civ. P. 65, Perez hereby requests that the Honorable Court enter a temporary restraining order and preliminary injunction:

   (a) requiring Honor to release or instruct the release of the original bill of lading for the Shipment pursuant to Perez's instructions; and

   (b) preventing Honor from attempting to assert or enforce a lien on the Shipment upon arrival in South Korea, or otherwise interfering with the delivery of the Shipment to Alstom, GSE&C, their agents and/or designees.

72.     To obtain preliminary relief, a plaintiff must demonstrate: (1) a substantial likelihood of success on the merits; (2) a substantial threat that the plaintiff will suffer irreparable injury if an injunction is not granted; (3) that the threatened injury outweighs any damage that an injunction might cause the defendant; and (4) that an injunction will not disserve the public interest. *Planned*

11

*Parenthood of Houston & Se.Tex. v. Sanchez*, 403 F.3d 324, 329 (5th Cir. 2005). Each factor must be present, but their relative importance will vary as they are applied on a "sliding-scale basis." *Knights of the Ku Klux Klan, Realm of La. v. East Baton Rouge Parish Sch. Bd.*, 578 F.2d 1122, 1125 (5th Cir. 1978) ("Where one or more of the factors is very strongly established, this will ordinarily be seen as compensating for a weaker showing as to another or others.").

73.     Perez has filed a Verified Complaint, properly setting forth the facts demonstrating the immediate and irreparable injury that will result if Perez's Application for Injunctive Relief is not granted.  The Vessel is currently scheduled to arrive at Mokpo, South Korea on August 13, 2014.  At such time, Perez, Alstom, GSE&C, and/or their duly authorized agents or designees will be prevented from taking delivery of the Shipment without presentation of the original bill of lading, which is currently being withheld by Honor without justification.  Indeed, the cargo and Vessel will be subject to seizure, detention, demurrage, and fines by Korean authorities, the possible return of the cargo to the United States due to lack of proper documentation, and an attempt by Honor to exercise a non-existent lien.  Honor's refusal to release or instruct the release of the original bill of lading thus constitutes a "presently existing, actual threat" of irreparable injury. *Qingdao Taifa Group v. U.S.*, 581 F.3d 1375, 1379 (Fed. Cir. 2009); *see also Winter v. Natural Res. Def. Counsel, Inc.*, 555 U.S. 7, 22, 129 S. Ct. 365 (2008).

74.     There is no adequate remedy at law because the damages that will result from the detention of the Shipment will be so disproportionate to the additional freight charges in dispute and will continue to accrue so long as the bill of lading is not released. *See also Janvey v. Alguire*, 647 F.3d 585, 595-96 (5th Cir. 2011) (the mere fact that economic damages may be available does not always mean that a remedy at law is "adequate").  The turbine blades and nacelles alone are valued at over € 13 million.  If the Shipment is not released on time, Perez will face, *inter alia*, immediate claims for

damages from Alstom since the logistics of delivering the equipment to destination will be disrupted and the multi-million-dollar project will be put behind schedule. As a result, the project will be delayed in generating energy revenue. From the outset, Honor was aware that time was of the essence for this project and that substantial penalties would be incurred by Perez and/or Alstom if the Shipment was not delivered on time. Moreover, there would be little prospect of recovering the damages incurred in Korea against a small freight forwarder such as Honor. *See Winston v. General Drivers, Warehousemen & Helpers Local Union No. 89*, 879 F. Supp. 719, 725 (W.D. Ky. 1995) ("A theoretical right to recover money damages will not constitute an adequate legal remedy where difficulties in the collection of any judgment render that remedy illusory.").

75.     In addition, Perez stands to lose its goodwill and future business from Alstom (one of its largest and most important clients) as a result of the complications and delays caused by the present dispute. Such loss of goodwill cannot be adequately compensated by economic damages. *Basicomputer Corp. v. Scott*, 973 F.2d 507, 5012 (6th Cir. 1992); *Daily Instruments Corp. v. Heidt*, ---F.Supp.2d---, 2014 WL 710683 at *16 (S.D. Tex. Feb. 21, 2014).

76.     There is substantial likelihood that Perez will prevail on the merits, as supported by the facts alleged in the Verified Complaint. *See Janvey*, 647 F.3d at 595-96 (to satisfy the first element, a plaintiff is not required to prove entitlement to summary judgment). First, with respect to the contract-based claims, the email communications between the parties demonstrate that Honor tendered an unambiguous final rate for inland freight, which Perez accepted and then paid. Honor did not condition such tender on: (a) an acceptance of any terms and conditions of service; or (b) the adjustment of the inland freight rate according to the type of trailer used by the motor carriers. Nor did Honor reserve any right to do so. Thus, Honor is bound by the terms agreed upon by the parties, regardless of whether Honor thought other undisclosed terms would apply. *Daily Instruments*

*Corp.*, 2014 WL 710683 at *11.

77.     To the extent Honor contends that a hyperlink found in an email footer or signature block was sufficient to place Perez on notice of certain online terms and conditions, courts throughout the country have deemed such hyperlinks to be insufficient for purposes of notice and incorporating terms into a contract.  *See, e.g., Liberty Syndicates at Lloyd's v. Walnut Advisory Corp.*, 09-cv-1343, 2011 WL 5825777 at *5 (D.N.J. Nov. 16, 2011); *see also One Beacon Ins. Co. v. Crowley Marine Servs., Inc.*, 648 F.3d 258, 268 (5th Cir. 2011) ("Terms incorporated by reference will be valid so long as it is clear that the parties to the agreement had knowledge of and assented to the incorporated terms."); *In re CFLC, Inc.*, 209 B.R. 508, 514-15 (9th Cir. 1997) (finding no agreement by debtor to freight forwarder's general lien terms contained on reverse side of invoices); *cf. Jerez v. JD Closeouts, LLC*, 36 Misc.3d 161, 170, 943 N.Y.S.2d 392 (Nassau Dist. Ct. 2012) ("e-commerce merchants cannot blithely assume that the inclusion of sales terms, listed somewhere on a hyperlinked page on its website, will be deemed part of any contract of sale.").

78.     Second, "[t]he relationship between a shipper and a freight forwarder is 'fiduciary' and of 'the greatest trust and fidelity.'" *Johnson Prods. Co. Inc. v. M/V La Molinera*, 628 F.Supp. 1240, 1246 (S.D.N.Y. 1986) (*citing U.S. v. Ventura*, 724 F.2d 305, 311 (2d Cir. 1983)).  Honor, as Perez' self-described agent, had a duty to use due care in properly arranging the transportation of the Shipment and to disclose all relevant information to Perez regarding the inland carriage. *See id.* (*citing Knudsen v. Torrington Co.*, 254 F.2d 283, 286 (2d Cir. 1958) (noting that the agency relationship "imposes fiduciary obligations of loyalty and obedience not normally present in other bilateral agreement.")).  Indeed, the regulations promulgated by the FMC provide that "[n]o licensed freight forwarder shall withhold any information concerning a forwarding transaction from its principal…" 46 C.F.R. § 515.32(c).  Honor has clearly and intentionally breached its duties as a fiduciary and freight

14

forwarder to Perez by holding the original bill of lading hostage in exchange for additional inland freight.

79.     Third, Honor's attempt to assert a lien where none exists—essentially by holding the original bill of lading hostage in order to extort security—constitutes an unlawful conversion. *Goodpasture, Inc. v. M/V POLLUX*, 602 F.2d 84, 87 (5th Cir. 1979).

80.     The threatened injury to Perez (outlined above) substantially outweighs any damage that an injunction might cause Honor. Perez does not seek to prevent Honor from asserting or pursuing its claim against Perez for the additional inland freight charges. Indeed, Perez has voluntarily submitted itself to the jurisdiction of this Honorable Court in order to vindicate itself on the merits—thereby dispelling any concern that Honor might have regarding: (a) the ability of a U.S. court to obtain such jurisdiction over a Spanish entity; or (b) the unwillingness of a Spanish court to recognize an award against Perez based on insufficient service of process or lack of personal jurisdiction.

81.     Moreover, the issuance of a preliminary injunction would not adversely affect the public interest. In fact, the public interest "in identifying and correcting harmful business practices" like those alleged by Perez in its Verified Complaint would be served by the issuance of such an injunction. *Thompson v. Hayes*, 748 F.Supp.2d 824, 832 (E.D. Tenn. 2010); *cf. Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 625-26 (5th Cir. 1985) (finding the vital public interest in protecting consumers against the "harmful effect of overcharges" established the "requisite apprehension of irreparable injury").

82.     Perez has contacted Honor, both orally and in writing, in an effort to resolve the present dispute, however Honor refuses to release or to direct the release of the original bill of lading. Pursuant to Fed. R. Civ. P. 65(b)(1)(B), Perez's undersigned counsel further certify that they are in

regular contact with Honor's counsel and have advised of their intention to seek the injunctive relief requested herein. Such relief will not impose any undue burden on any concerned party. Given the short amount of time before the Vessel arrives at Mokpo, Korea, no further notice should be required.

83.     A court has discretion to require a plaintiff to provide security for the issuance of the temporary restraining order or preliminary injunction under Fed. R. Civ. P. 65(c), and it may elect to require no security at all. *Corrigan Dispatch Co. v. Casa Guzman, S. A.*, 569 F.2d 300 (5th Cir. 1978). Under the present circumstances, there is no reason to require Perez to provide security because: (a) no debt is owed to Honor under the parties' agreement; (b) Honor cannot exercise a cognizable lien against the bill of lading or the Shipment, whether maritime or contractual, and is not entitled to security as an ordinary litigant; and (c) Honor's alleged claim against Perez for additional inland freight charges will not be prejudiced or barred by the release of the bill of lading. Nevertheless, Perez will consent to posting a bond in the amount of $500 to cover any nominal damages suffered by Honor as a result of an improper injunction.

84.     Perez respectfully requests the Court to schedule a hearing on its Application for Injunctive Relief at the earliest possible time on or before **Friday August 8, 2014** and, after hearing the request, to issue a preliminary injunction against defendant.

### PRAYER FOR RELIEF

WHEREFORE, plaintiff Perez prays:

1. that a temporary restraining order be entered against defendant Honor:

   a. requiring Honor to release or direct the release of the original bill of lading for the Shipment pursuant to Perez's instructions; and

16

      b.  preventing Honor from attempting to assert or enforce a lien on the Shipment upon arrival in South Korea, or otherwise interfering with the delivery of the Shipment to Alstom, GSE&C, their agents and/or designees;

2.  that a hearing for a preliminary injunction be set no later than **Friday, August 8, 2014;**

3.  That process in due form of law according to the practice of this Honorable Court be issue against the Honor, citing it to appear and answer the foregoing;

4.  that a judgment be entered against Honor for the amount of Perez's direct and consequential damages, together with costs, interest, and reasonable attorneys' fees;

5.  that punitive damages be awarded against Honor for its willful and intentional breach of its fiduciary and freight forwarder duties to Perez;

6.  that a declaratory judgment be entered against Honor finding that:

      a.  Perez is not liable to Honor for the $285,420 in additional inland freight charges under the parties' agreement; and

      b.  no lien exists on either the bill of lading or the Shipment, whether maritime or contractual in nature, in Honor's favor; and

7.  For such other relief as this Honorable Court may deem just and proper.

Dated:  August 6, 2014                    Respectfully submitted,

                                          _____
Of Counsel:                               DANA K. MARTIN
                                          S.D. Tex. No. 126
JUSTIN M. HEILIG                          Texas Bar No. 13057830
S.D. Tex. No. 1410754                     DANIELA OLIVEIRA
New York State No. 4699229                S.D. Tex. No. 1314516
                                          Texas Bar No. 24075837
HILL RIVKINS LLP
45 Broadway, Suite 1500                   HILL RIVKINS LLP
New York, NY 10006                        55 Waugh Drive, Suite 1200
Tel: (212) 669-0600                       Houston, TX 77007
Fax: (212) 669-0698                       Tel: (713) 222-1515
Email: jheilig@hillrivkins.com            Fax: (713) 457-2287
                                          Email: dmartin@hillrivkins.com
                                          Email: doliveira@hillrivkins.com

                                          ATTORNEYS FOR PLAINTIFF
                                          A. PEREZ Y CIA., S.L.

## VERIFICATION

I, Ramiro Cobo Garcia-Cobo, hereby affirm as follows:

1.      I am the Director (Vigo office) for plaintiff A. Pérez y Cía., S.L. ("Perez").  I have read and reviewed the foregoing Verified Complaint and know the contents thereof and, the same is true to the best of my knowledge, information and belief.

2.      The sources of my knowledge, information and belief are direct communications with personnel at defendant Worldwide Logistics LLC, discussions with my colleagues at Perez, and documentation regarding the matters set forth in the Verified Complaint.

2.      I hereby affirm under the penalty of perjury of the United States of America that the foregoing statements are true and correct.

Dated: August 5th, 2014, Spain

Signed: Ramiro Cobo Garcia-Cobo

Director (Vigo office)